IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALVADOR MAGLUTA, | No. 4:23-CV-01261 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| FEDERAL BUREAU OF PRISONS and DAVID CHRISTENSEN, | |
| Defendants. | |

MEMORANDUM OPINION

JUNE 14, 2024

## I.  BACKGROUND

In January 2003, the United States District Court for the Southern District of Florida sentenced Salvador Magluta to 205 years in federal prison for Money Laundering, Conspiracy to Launder Money, Conspiracy to Obstruct Justice, Obstruction of Justice by bribing a witness, and Obstruction of Justice by bribing a juror.[1] That court recommended that Magluta "should be placed in a facility in Florida to facilitate visitation by his family."[2] The United States Court of Appeals for the Eleventh Circuit subsequently vacated Magluta's conviction and sentence for juror bribery, and the district court resentenced him to 195 years in November

---

[1] Amended Petition for Writ of Habeas Corpus, Doc. 16 ¶¶5-6.
[2] *Id.* ¶8; Exhibit 1, Doc. 16-1.

2006.³ The Order issued at resentencing did not recommend Magluta's placement in Florida.⁴

Magluta never served any part of his ongoing sentence in a Florida facility.⁵ In 2006, Magluta was transferred to ADX Florence, located in Florence Colorado.⁶ He served his sentence there between 2006 and 2010, and 2013 and 2022.⁷ Magluta's amended petition complains of harsh conditions at the ADX Florence facility which were unfit for inmates suffering from mental illness.⁸ In June 2022, after a review committee determined that Magluta was suffering from a serious mental illness, he was transferred to a facility at Allenwood because of a settlement agreement requiring inmates with mental illness to be transferred to facilities other than ADX Florence.⁹ Despite initially being placed within Allenwood's Transitional Care Unit ("TCU"), he was "abruptly removed" from this unit and placed in the Special Housing Unit following an internal investigation.¹⁰ After Magluta filed an administrative form challenging this transfer, Magluta was advised that he was being referred back to ADX Florence.¹¹

---

³ Amended Petition for Writ of Habeas Corpus, Doc. 16 ¶10-11.
⁴ Exhibit 1, Amended Judgment of Sentence, Doc. 18-1.
⁵ Amended Petition for Writ of Habeas Corpus, Doc. 16 at ¶14.
⁶ *Id.* ¶15.
⁷ *Id.* ¶18.
⁸ *Id.* ¶¶ 16, 18-21.
⁹ *Id.* ¶¶21-26.
¹⁰ *Id.* ¶30.
¹¹ *Id.* ¶¶32-33; Exhibit 4, Doc. 16-4.

Magluta subsequently filed a petition for writ of habeas corpus challenging this transfer.[12] This issue became moot while pending, as the Bureau of Prisons ("B.O.P.") reversed course and decided not to seek Magluta's transfer to ADX.[13] Nevertheless, Magluta filed an amended petition for writ of habeas corpus in March 2024.[14] He avers "upon information and belief" that he has exhausted his administrative remedies with the B.O.P. before filing this habeas petition.[15]

The amended petition challenges three conditions of Magluta's confinement at Allenwood. First, it challenges Magluta's placement in the Secure Mental Health Step-Down Program (the "Step Down Program") after his removal from the TCU.[16] Inmates in the residential Step Down Program have also been identified with mental illnesses, but because the Step Down Program is designed for inmates who also have a "history of violence," their conditions of confinement are more restrictive than those in the TCU Program.[17]

Second, Magluta challenges the B.O.P.'s failure to place him in a Florida facility given the sentencing judge's original recommendation because there are facilities available in Florida which can accommodate his mental health care classification.[18]

---

[12] *Id.* ¶34; Petition for Writ of Habeas Corpus, Doc. 1.
[13] Amended Petition for Writ of Habeas Corpus, Doc. 16 ¶35.
[14] *Id*, generally.
[15] *Id.* ¶65.
[16] *Id.* ¶¶40-47.
[17] *Id.*
[18] *Id.* ¶¶49-51.

3

Third, Magluta challenges the inadequate medical care he has received as violating the Eighth Amendment.[19] The first medical issue related to untreated kidney stones in Magluta's gall bladder; the second, an untreated hernia;[20] the third, an unwarranted and un-needed laser eye surgery;[21] the fourth, severe and unmet dental needs leaving Magluta with one full tooth left in his mouth, three pieces of other teeth under the gum cutting through and breaking the skin around his mouth, and an unacceptable delay in obtaining dentures;[22] the fifth, insufficient mental health care and medication, including the B.O.P. medical and psychological personnel's failure to respond to Magluta's complaints of severe side effects from his medications.[23]

Magluta's habeas petition requests injunctive relief for each of these harms: removal from the Step Down Program and transfer to a different care level 3 facility and/or program or level of confinement; transfer to a facility in Florida; and providing care for Magluta's ongoing medical and dental needs.[24]

## II.   LAW

Title 28 U.S.C. § 2241 grants the federal district courts authority to grant writs of habeas corpus within their respective jurisdiction. Although a writ of

---

[19]   *Id.* ¶52.
[20]   *Id.* ¶53.
[21]   *Id.* ¶54.
[22]   *Id.* ¶55-58.
[23]   *Id.* ¶¶60-63.
[24]   *Id.* ¶66.

4

habeas corpus typically seeks release from physical imprisonment, there are other restraints of liberty which support the issuance of a writ of habeas corpus.[25] Unlike Title 28 U.S.C. § 2255, Section 2241 is not "expressly limited to challenges to the validity of the petitioner's sentence,"[26] so Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."[27]

At the same time, habeas corpus is an extraordinary remedy reserved for extraordinary cases.[28] The writ of habeas corpus's "singular focus on the legality of detention not only constrains the scope of a habeas court's review, but also the nature of relief that a habeas court may provide."[29]

Third Circuit case law sets out two requirements for an inmate to challenge the execution of his sentence under Section 2241. First, "[i]n order to challenge the execution of his sentence under § 2241 [a habeas petitioner] would need to allege that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment."[30] The habeas petition only concerns

---

[25] *Jones v. Cunningham*, 371 U.S. 236, 239-40, 243 (1963).
[26] *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001); *United States v. Eakman*, 378 F.3d 294, 297 (3d Cir. 2004)
[27] *Coady*, 251 F.3d at 485.
[28] *See Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973) ("habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate").
[29] *Kamara v. Attorney General*, 420 F.3d 202, 214 n.11 (3d Cir. 2005).
[30] *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012).

the execution of an inmate's sentence if "granting the petition would 'necessarily imply' a change to the . . . execution of the petitioner's sentence."³¹

Second, "[t]here may be circumstances where an alleged discrepancy between a court's recommendation and the BOP's conduct do not give rise to a habeas claim,"³² which ordinarily includes habeas petitions challenging the conditions of a prisoner's confinement. Magluta cites to non-binding Supreme Court dicta³³ and out-of-circuit case law describing the habeas petition's "extraordinary breadth,"³⁴ but this circuit has already considered these dicta and instead held that habeas petitions are ordinarily unavailable to challenge conditions of confinement³⁵ absent extraordinary circumstances.³⁶

---

31  *McGee v. Martinez*, 627 F.3d 933, 936 (3d Cir. 2010).
32  *Cardona*, 681 F.3d at 537 n.7.
33  *See* Doc. 23 at 3 ("[T]he Supreme Court has long embraced the notion that incarcerated individuals may challenge conditions of their confinement by a petition for writ of habeas corpus.") (citing *Johnson v. Avery*, 393 U.S. 483, 485 (1969) (holding that regulation barring prisoners from assisting others with legal matters, including preparation of habeas petitions, unconstitutionally abridged right of habeas corpus); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (stating that habeas corpus may also "be available to challenge such prison conditions," but noting that "we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983. That question is not before us."); *Ziglar v. Abbasi*, 582 U.S. 120, 143-46 (2017) (noting that the Supreme Court has "left open the question whether [prisoners] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus," without deciding this question).
34  Reply Brief, Doc. 23 at 2-3 (citing *Ilina v. Zickefoose*, 591 F.Supp. 2d 145, 146-47 (D. Conn. 2008) ("[T]he Second Circuit . . . has long recognized that a claim challenging the conditions of a prisoner's confinement may be asserted in a federal habeas petition.")).
35  *See Folk v. Schuylkill*, No. 23-1935, 2023 U.S. App. LEXIS 22170, at *2-3 (3d Cir. Aug. 23, 2023); *Williams v. Sec'y of Pa. Dep't of Corr.*, 459 F.App'x 87, 88-89 (3d Cir. Jan. 25, 2012) ("[T]he prisoners raise 'conditions of confinement' claims that do not lie at the core of habeas and thus are properly brought pursuant to § 1983.").; *Roudabush v. Warden Fort Dix Fed. Corr. Inst.*, 640 F.App'x 134, 136 (3d Cir. 2016) (federal prisoner challenging conditions of confinement should have brought challenge under *Bivens v. Six Unknown*

6

"[A]lthough a § 2241 attack on the execution of a sentence may challenge some matters that occur at prison, such as a deprivation of good-time credits and other prison disciplinary matters . . . this does not make § 2241 actions like 'condition of confinement' lawsuits, which are brought under civil rights laws."[37] Instead, "when the challenge is to a condition of confinement such that a finding in plaintiff[']s favor would not alter his sentence or undo his conviction, [a civil rights] action under § 1983" or *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,[38] not a habeas petition, "is appropriate."[39]

"[T]he precise meaning of 'execution of the sentence,'" *i.e.*, something that alters the petitioner's sentence in contrast to altering mere conditions of confinement, "is hazy."[40] But the Third Circuit has identified some examples from other Circuits. Section 2241 petitions "challeng[ing] the *execution* of a federal prisoner's sentence, include such matters as the administration of parole,

---

    *Named Agents of Fed. Bur. Of Narcotics*, 403 U.S. 388 (1971), not habeas petition); *Murray v. Bledsoe*, 386 F.App'x 139, 139 (3d Cir. 2010) (same).

36  *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323-34 (3d Cir. 2020). The bounds of those "extraordinary circumstances" are discussed below.

37  *Stanko v. Obama*, 393 F.App'x 849, 850-51 (3d Cir. 2010) (quoting *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997)). At the same time, the mere fact that the challenged custodial decision stems from a constitutional violation, and thus may arguably be brought under Section 1983, does not render that a "condition of confinement" and does not preclude habeas relief. *Hope*, 972 F.3d at 323-34.

38  403 U.S. 388 (1971).

39  *McGee v. Martinez*, 627 F.3d 933, 936 (3d Cir. 2010) (quoting *Leamer*, 288 F.3d at 542).

40  *Woodall*, 432 F.3d at 242.

7

computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."[41]

### III. ANALYSIS

In this habeas petition, Magluta challenges three actions taken by the B.O.P., relating to his placement in a restrictive mental health program, the B.O.P.'s failure to place him in a facility closer to his family, and his inadequate medical care. Magluta may obtain injunctive relief under *Bivens* by arguing that some of these conditions violate his civil rights, but a habeas petition is not the proper vehicle to remedy these conditions of confinement, so this Court lacks jurisdiction under Section 2241 to consider Magluta's petition. In doing so, the Court does not seek to minimize the importance of these issues to Magluta, only to confine the scope of habeas to that recognized by Congress and applicable case law.

#### A. Step Down Placement.

Magluta's first grievance is his placement in the Step-Down Unit rather than the TCU, which also provides him mental health treatment and is far less restrictive of his liberties.[42] But because Magluta does not allege that his placement

---

[41] *Id.* at 242 (quoting *Jiminian v. Nash*, 245 F.3d 144, 147 (2d Cir. 2001)).
[42] The Government claims that Magluta's participation in the Step-Down program is voluntary because the B.O.P. policies say so. See Response to Petition for Habeas Corpus, Doc. 18 at 9. It is true that an inmate's voluntary participation in a B.O.P. program defeats his habeas petition. *See, e.g.*, *Duronio v. Werlinger*, 454 F.App'x 71, 73 (3d Cir. 2011). But Magluta is challenging whether or not the B.O.P. has violated its own policies, so relying on B.O.P. policy circularly assumes a fact at issue. He also claims in his reply brief that he was forced to choose between being returned to ADX and being placed in the Step-Down Unit. Reply Brief, Doc. 23 at 4 n.3. While this factual issue would ordinarily be resolved at a hearing, the

8

in the Step-Down Unit conflicts with anything in the sentencing order, and because no such discrepancy is apparent to the Court, this placement does not concern the execution of Magluta's sentence. The facts of this case are like those in *Cardona v. Bledsoe*: an inmate filed a Section 2241 habeas petition challenging his placement in a program which was more restrictive of his liberties, and his placement in that program conflicted with B.O.P. policies, but because this did not conflict with anything in the sentencing Order, the Third Circuit held that the district court had no jurisdiction to rule upon the validity of the B.O.P.'s decision.[43]

Magluta cites to the Third Circuit's unpublished opinion in *Ganim v. Federal Bureau of Prisons*, but *Ganim* only discussed the second requirement that a Section 2241 challenge must concern the execution of an inmate's sentence rather than his conditions of confinement.[44] *Ganim* also predated *Cardona v. Bledsoe* and did not discuss its requirement that "to challenge the execution of his sentence under § 2241 [a habeas petitioner] would need to allege that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment."[45] Third Circuit case law also casts doubt upon whether Magluta's placement in the Step-Down Program is sufficiently restrictive of his

---

Court does not schedule a hearing because, as explained below, it lacks jurisdiction to hear the petition.
[43] *Cardona*, 681 F.3d at 534, 536. *See also Moslem v. Warden, F.C.I. Fort Dix*, 2024 U.S. App. LEXIS 2691, at *3-4 (3d Cir. Feb. 16, 2024) ("Moslem did not allege that his custody classification conflicts with his sentence. Indeed, he did not argue that the sentencing court expressed any view about the appropriate security designation for him.").
[44] 235 F.App'x 882, 884 (3d Cir. 2007).
[45] *Cardona*, 681 F.3d 537.

9

liberties to concern the execution of his sentence,[46] but there is no need for the Court to reach this issue.

Accordingly, Section 2241 does not provide this Court with jurisdiction to rule upon the validity of Magluta's placement into the Step Down Unit through a habeas petition.

### B. Placement Outside of Florida.

Magluta also challenges the B.O.P.'s failure, since his initial confinement in 2003, to place him in a Florida facility as recommended by the sentencing judge. The Government responds by noting that when Magluta was resentenced after appeal, the new Order did not contain this recommendation.[47] Magluta does not address this argument in his Reply Brief.[48] But even if the new Order had recommended that Magluta be placed in Florida, I agree with the Government that this decision cannot be challenged through a habeas petition because it does not affect the execution of Magluta's sentence as a matter of law.

---

[46] *See, e.g., Murray*, 386 F.App'x at 140 (where federal prisoner sought release from "24 hour a day custody in cell confinement" and a transfer to another penitentiary, Court concluded that he had not "raised a claim that involves the execution of his sentence as contemplated in *Woodall*"); *Jones v. Thomas*, Civil Action No. 3:13-3105., 2015 U.S. Dist. LEXIS 20448, at *7-8 (M.D. Pa. Feb. 20, 2015) (collecting cases holding that placement in high-security unit at penitentiary did not concern execution of prisoner's sentence, and thus could not be challenged through habeas petition). *But see Ganim v. Fed. Bureau of Prisons*, 235 F.App'x 882, 884 (3d Cir. 2007) (quoting *Pischke v. Litscher*, 178 F.3d 497 (7th Cir. 1999)) (explaining that "Habeas corpus cannot be used to challenge a *transfer between prisons* . . . unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about a . . . 'quantum change in the level of custody.'") (emphasis added).

[47] *See* Brief in Opposition, Doc. 18 at 10; Amended Judgment of Sentence, Doc. 18-1.

[48] *See* Reply Brief, Doc. 23 at 2.

10

"Habeas corpus cannot be used to challenge a transfer between prisons . . . unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about a . . . 'quantum change in the level of custody.'"[49] In *Woodall v. Federal Bureau of Prisons*, the Third Circuit concluded that denying an inmate's placement into a community corrections center ("CCC"), also known as a "halfway house," affects the execution of his sentence and is properly challenged under Section 2241.[50] "Carrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution" because it "satisf[ies] different goals from other types of confinement," and has "relatively lenient policies" for its participants significantly broadening their liberties, including employment components allowing prisoners to leave to work in the community and eligibility for "weekend passes, overnight passes, or furloughs."[51]

From this, Magluta claims that "[t]he holding in *Woodall* makes abundantly clear that conditions of confinement claims may be brought under habeas corpus."[52] But *Woodall* strenuously contrasted CCC placement with "a simple transfer," noting that the "petition crosses the line beyond a challenge to, for

---

[49] *Ganim*, 235 F.App'x at 884 (quoting *Pischke*, 178 F.3d 497).
[50] 432 F.3d 235, 243 (3d Cir. 2005).
[51] *Id.* at 243.
[52] Reply Brief, Doc. 23 at 4.

11

example, a garden variety prison transfer."[53] The Third Circuit applied this dictum in its unpublished decision in *Ganim*, concluding that the district court lacked jurisdiction to consider a habeas petition challenging the B.O.P.'s refusal to transfer the petitioner to a facility with the same security level which would be located closer to his family.[54] The *Ganim* court concluded that the petitioner challenged the kind of "decision relating to a simple or garden variety transfer" referenced in *Woodall*.[55] So like the petitioner in *Ganim*, Magluta's challenge concerns a "garden variety transfer" decision outside of the scope of habeas review. Accordingly, this Court lacks jurisdiction to consider this habeas challenge as well.

### C. Medical Care and Conditions of Confinement

Finally, Magluta challenges the inadequate medical care he has received while under B.O.P. custody. Magluta's briefing focuses on demonstrating that the Allenwood Prison's inadequate medical care violates the Eighth Amendment's prohibition on cruel and unusual punishment.[56] But while Magluta provides many Section 1983 cases finding Eighth Amendment violations under similar circumstances, he does not provide any cases holding that a habeas petition is the proper vehicle to remedy such deficiencies. Cruel and unusual punishment claims

---

[53]   *Id.*
[54]   *Ganim*, 235 F.App'x at 882, 884.
[55]   *Id.* at 883.
[56]   *See* Memorandum of Law, Doc. 17 at 11-16.

12

such as Magluta's must ordinarily be brought through a Section 1983 challenge, or here a *Bivens* challenge,[57] and not a petition of habeas corpus, because they relate to the conditions of confinement rather than a the execution of a prisoner's sentence.[58]

To its credit, the Government notes that in *Hope v. Warden York County Prison*, the Third Circuit stated that it permits habeas relief to be afforded for Eighth Amendment "conditions of confinement" violations in "extreme cases."[59] But in *Hope*, the petitioners were elderly inmates with preexisting conditions who sought release due to the COVID-19 pandemic, and it was the requested remedy of release from confinement which made the habeas petition proper, despite the challenge originating in the conditions of the inmates' confinement.[60] *Hope* fell into a "narrow subset of actions that arguably might properly be brought as either" a civil rights or habeas challenge, "where the deprivation of rights is such that it necessarily impacts the fact or length of detention;" under such circumstances, "the

---

[57] *See Carlson v. Green*, 446 U.S. 14 (1980) (establishing availability of relief for federal officials' violations of Eighth Amendment for failure to provide adequate medical treatment).
[58] *See Stanko* v. Obama, 393 F.App'x 849 (3d Cir. 2010) (Section 2241 habeas petition challenging cruel and unusual punishment dismissed because Section 1983 was the proper vehicle for relief); *Roudabush*, 640 F.App'x at 136 (federal prisoner challenging conditions of confinement should have brought challenge under *Bivens v. Six Unknown Named Agents of Fed. Bur. Of Narcotics*, 403 U.S. 388 (1971), not habeas petition).
[59] *Hope*, 972 F.3d at 325; *see also Ndir v. Doll*, 459 F.Supp. 3d 627, 633 (M.D. Pa. 2020).
[60] 323 ("Where a petitioner seeks release from detention, habeas (not a § 1983 action seeking release) is proper."); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

13

narrower remedy, the habeas petition, is the only available avenue for relief."[61] Stated otherwise, *Hope* did not even implicate the distinction between the execution of a sentence and the conditions of confinement, because the requested relief concerned the fact or length of detention.

Magluta's challenge does not fall into the "narrow subset" of "extreme cases" highlighted in *Hope*,[62] and even if it did, Magluta does not seek to challenge the fact or length of detention and does not, for purposes of his Eighth Amendment challenge, seek release from confinement or confinement in a different facility.[63] So nothing about his case distinguishes it from an ordinary case challenging the "conditions of confinement" which should be brought under a civil rights action rather than a habeas petition. The *Hope* court did state that it "do[es] not address at this time whether a § 2241 claim may be asserted in less serious circumstances" wherein the violation is not so severe that it necessitates release from confinement.[64] Regardless of whether "less serious circumstances" could support a habeas petition, they do not support one under existing Third Circuit precedent. *Hope* cited to the Third Circuit's earlier decision in *Leamer v. Fauver* as an

---

[61] *Id.* at 323-34 (quoting *Leamer*, 288 F.3d at 540).
[62] *See Hope*, 972 F.3d at 324 (quoting *Ali v. Gibson*, 572 F.2d 971, 975 n.8 (3d Cir. 2000) (petitioner's claim rose "to a possible habeas attack on the conditions of confinement, cognizable in a federal habeas action *only in extreme cases*")).
[63] *See Whiteside v. Fort Dix Fed. Prison*, Civ. No. 20-5544 (NLH), 2021 U.S. Dist. LEXIS 130159, at *10 (D.N.J. July 13, 2021) ("[T]he Court concludes that convicted and sentenced prisoners may only resort to a habeas remedy under § 2241 for allegedly unconstitutional conditions of confinement in situations when no action short of release would be sufficient to prevent irreparable constitutional injury.").
[64] *Hope*, 972 F.3d at 325 n.5.

example of when a civil rights action, rather than a habeas petition, was the proper remedy.[65] And *Leamer* is directly on point.

The petitioner in *Leamer* brought a Section 2241 habeas petition challenging prison restrictions denying him required treatment.[66] Prison officials detained the petitioner in solitary confinement because he was diagnosed with a "mental aberration," and while he was confined they were indifferent to his physical and mental wellbeing and denied him treatment.[67] The Third Circuit went on to find that the petitioner had alleged a claim under the Eighth Amendment,[68] but before doing so, it noted that his claim "would not be properly brought under habeas at all."[69] Subsequent courts have held similarly.[70]

---

[65] *Id.* at 323 (citing *Leamer*, 288 F.3d at 54)).
[66] *Leamer*, 288 F.3d at 535-537.
[67] *Id.* at 547-58.
[68] *Id.*
[69] *Id.* at 544.
[70] *See, e.g.*, *Meyers v. Martinez*, No. 1:10-cv-1151, 2010 U.S. Dist. LEXIS 54789, at *7 (M.D. Pa. June 4, 2020) (holding that "Meyer's claims that Respondent is denying him adequate medical ca[re] for his psychiatric and other medical conditions," as well as administering unwanted and unnecessary medical procedures with side effects, "constitute claims of inadequate care under the Eighth Amendment," "do not challenge the fact or length of his sentence, and therefore may not be pursued through the instant [Section 2241 habeas] Petition"); *Lasko v. Holt*, 334 F.App'x 474, 475 n.2 (3d Cir. 2009) ("To the extent that Lasko also attempts to advance an Eighth Amendment medical neglect claim on appeal, we cannot consider it. This claim, if successful, would not 'spell speedier release,' and therefore does not 'lie[] at "the core of habeas corpus."'") (citations omitted); *Wegmann v. Spaulding*, No. 1:22-cv-01529, 2023 U.S. Dist. LEXIS 92119, at *5 (M.D. Pa. May 25, 2023) ("[T]o the extent that Petitioner is asserting stand-alone Eighth Amendment claims concerning the conditions of his confinement . . . the Court finds that those claims do not sound in habeas.").

Magluta argues in his Reply Brief that *Bivens* does not provide an avenue for relief because existing law renders it "perfunctory."[71] Magluta has a point. Although the Court does not decide this issue today, it notes that under existing case law, nearly every case is distinguished from *Bivens* and its progeny.[72] Unfortunately, the fact that Magluta may be left remediless is no reason for this court to reject long-established Third Circuit case law. Revisiting prior decisions is the role of the Court of Appeals and providing a new remedy is the role of Congress. Even if this Court did take an expansive view of what conditions concern the execution of Magluta's sentence, Magluta's challenge is improperly filed as a habeas petition because it does not challenge any command or recommendation in the sentencing judgment.[73] Magluta cannot explain away that deficiency.

---

[71] *See* Reply Brief, Doc. 23 at 5.

[72] *See Xi v. Haugen*, 68 F.4th 824, 833 (3d Cir. 2023) (citing *Egbert v. Boule*, 596 U.S. 482, 491 (2022)) (explaining that when a case arises under a "new context" than *Bivens* and its progeny, the court must consider whether *Bivens* should be extended to cover this action); *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020) (what is considered a "new context" is "broad"); *Mammana v. Barben*, 856 F.App'x 411, 415 (3d Cir. 2021) (no *Bivens* remedy for Eighth Amendment conditions of confinement claims); *Thomas v. Martynuska*, No. 3:20-cv-181-SLH-KAP, 2024 U.S. Dist. LEXIS 31368, at *7 (W.D. Pa. Feb. 23, 2024) (Pesto, M.J.) ("lower courts around the country have been dismissing *Bivens* complaints about inadequate care in federal prisons since *Egbert v. Boule*, because any such claim would be a forbidden extension of *Bivens* to a new context if the facts alleged differ in nature and severity . . . Almost no medical care claim I have seen parallels *Carlson v. Green*.").

[73] *See, e.g.*, *Gillette v. Terr. of the V.I.*, 563 F.App'x 191, 194-95 (3d Cir. 2014) (explaining that a prisoner's complaint concerning deplorable conditions and lack of needed medical and mental health care were improperly pled as habeas petition because these conditions did not conflict with the sentencing judgment, how his sentence was put into effect, or how his sentence was carried out); *Share v. Krueger*, 553 F.App'x 207, 209 (3d Cir. 2014) (same).

Accordingly, because Magluta's Eighth Amendment complaints are properly characterized as challenges to the condition of his confinement rather than the execution of his sentence and they do not seek release from custody or implicate that remedy, so this Court lacks jurisdiction to consider those claims through a habeas petition.

## IV. CONCLUSION

Magluta's complaints are not properly brought through a habeas petition and therefore must be dismissed for lack of jurisdiction. Third Circuit precedent squarely forecloses using a habeas petition filed under Section 2241 to remedy the conditions Magluta complains of. In recognizing this fact, the Court does not intend to minimize the significance of Magluta's complaints, only to faithfully apply existing precedent setting out the boundaries of its jurisdiction to hear a habeas petition.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge